839 So.2d 1045 (2003)
AVALLONE ARCHITECTURAL SPECIALTIES, L.L.C., Plaintiff,
v.
DBCS CORPORATION, et al, Defendants.
No. 36,971-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*1046 Wiener, Weiss & Madison, by John M. Madison, Jr., Shreveport, for Appellant, Caddo Parish School Board.
Booth, Lockard, Politz, Lesage, Hayter & Odom, by John O. Hayter, III, Shreveport, for Appellee, Avallone Architectural Specialties, L.L.C.
Louis Raphael Avallone, Downer, Hammond & Wilhite, L.L.C., By: Kevin W. Hammond, for Appellee, Patterson Insurance Company.
Michael D. Corbell, In Proper Person, Individually and as Sole Shareholder of DBCS Corp. and Design Build Development Services.
Before STEWART, PEATROSS & MOORE, JJ.
PEATROSS, J.
This is a suit to enforce a labor and materialman's lien under the Public Works Act by a subcontractor for work performed on a public works project on property owned by the Caddo Parish School Board ("School Board"). Plaintiff, Avallone Architectural Specialties, L.L.C. ("Avallone"), initially filed suit against the general contractor and the School Board. Subsequently, Patterson Insurance Company ("Patterson"), the bid bond surety, was made a defendant in the suit by way of a third party demand filed by the School Board. Patterson filed a motion for summary judgment, which the trial court granted, thereby dismissing Patterson from the suit. The School Board appeals the trial court's ruling on summary judgment. For the reasons stated herein, we affirm.

FACTS
In 1999, the School Board solicited bids for renovations to one of the School Board's buildings on Knight Street in Shreveport ("the project"). Design Build *1047 Development Services, Inc. ("Design Build"), a Louisiana corporation owned by Michael Corbell, was one of the two bidders. Mr. Corbell also owned DBCS Corporation ("DBCS"), another Louisiana corporation. The School Board required bidders to submit a bid bond along with a bid and Mr. Corbell requested that Patterson issue a bid bond to secure his bid on the project. Patterson issued a bid bond for the project in the name of DBCS and the bid bond was submitted to the School Board with the bid of Design Build.[1]
The School Board accepted Design Build's bid and entered into an oral contract with Design Build for the renovation work on the project. The School Board issued a Notice to Proceed to Design Build on June 2, 1999, which noted that "contract documents would be forthcoming." The fact that these contract documents were never executed is not in dispute and no such documents were filed with the Caddo Parish Clerk of Court. In addition, while Superintendent Robert Schiller's affidavit states that a payment and performance bond would be required of the successful bidder, no payment and performance bond on the project was ever furnished by Patterson or any other surety. Nonetheless, the work was performed by Design Build; and, on January 26, 2000, a certificate of substantial completion was issued and filed with the Clerk of Court. The School Board paid Design Build a total of $750,000 for work performed. Apparently, however, at least one of the subcontractors and suppliers, Avallone, was not fully paid by Design Build.
In May 2000, this suit was filed by Avallone alleging that it had not been paid in full for materials supplied for the project and further alleging the School Board's liability for failure to secure a payment and performance bond from the contractor, Design Build. Subsequently, the School Board filed a third-party demand naming Patterson as defendant and alleging that Patterson was liable to the School Board as surety on the bid bond it had issued to DBCS.
Patterson responded with a motion for summary judgment contending, in part, that it had only issued a bid bond, not a payment and performance bond; and, therefore, it could not legally be held liable as surety for the work performed or materials supplied by a subcontractor on the project. Patterson argued that the School Board's failure to obtain a contract and a payment and performance bond barred the School Board's claim against Patterson as surety. The trial judge agreed, specifically stating:
... the Court does find merit in Patterson's motion that [the School Board] did not require Design Build to obtain a performance bond. The only bond which Patterson issued in connection with the Knight Street project was a bid bond, the purpose of which was to ensure that Mr. Corbell, if determined to be the low bidder, would accept the contract for the amount bid (sic). As succinctly stated by counsel for Patterson: `The damages available under a bid bond are to cover the cost of rebidding or having the contract performed at a higher price. They are not available to serve as a proxy for a performance bond *1048 which the School Board failed to obtain. Patterson's motion is that simple.'
Because [the School Board] issued a Notice to Proceed, authorized construction and paid the contractor without obtaining either a written contract or a payment or performance bond, there is no genuine issue of material fact as to Patterson.
With this ruling, Patterson was dismissed, with prejudice, from the suit. This appeal ensued.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
The Public Works Act provides a detailed procedure in the letting of public contracts. La. R.S. 38:2216 requires that:
a written contract shall be entered into by the successful bidder and the public entity letting the contract, and the party to whom the contract is awarded shall furnish good and solvent bond in an amount not less than one-half of the amount of the contract, for the faithful performance of his duties.
Further, La. R.S. 38:2241(A)(2) provides that the public entity shall require a payment bond for contracts in excess of $25,000. The scope and purpose of this section requiring a bond in connection with construction of public works is to protect the public authority from loss and expense arising out of the failure of the contractor to faithfully perform the contract. Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867 (La.App. 2d Cir.1974), applications denied, 295 So.2d 445. In addition, La. R.S. 38:2215(C) clearly states that, upon execution of the contract, the public entity has 30 days in which to issue a Notice to Proceed with the project.
In the case sub judice, none of the above statutory procedures were followed. The School Board issued a Notice to Proceed with the project without a written contract and without a payment and performance bond having been procured and furnished by Design Build. The requirements of the Public Works Act are mandatory and a public entity does not have the discretion to dispense with the formalities of contract and bond. Indeed, any contract not in compliance with the Public Works Act, including the requirement of a payment and performance bond, is null and void. Davis v. Franklin Parish School Board, 412 So.2d 1131 (La.App. 2d Cir.1982), writ denied, 415 So.2d 942 (La. 1982). Moreover, in Police Jury of Parish of Avoyelles v. Gaspard, 161 La. 70, 108 So. 128 (La.1926), the supreme court, applying Section 1 of Act 224 of 1918, an early version of Louisiana's Public Works Act, specifically held that, where a contract for the construction of a parish road was not reduced to writing and no bond was exacted therefor, the public entity was liable for liens for labor on the public works project.
In the present case, the School Board disregarded the mandatory requirement of delivery of an executed written contract and a payment and performance bond. It is because of its failure to secure *1049 such contract and bond that it is faced with a claim of an unpaid subcontractor, Avallone, after it had already paid the general contractor, Design Build. In an effort to reduce its liability, the School Board now argues that the bid bond should cover a portion of its liability to Avallone. We are not persuaded by the School Board's argument.
The bid bond in the case sub judice reads, in pertinent part:
... Patterson Insurance Company ... [is] ... firmly bound unto Caddo Parish School board ... as Obligee ... in the sum of Five Percent Greatest Amount of Bid Dollars (5% GAB) ...

* * *
NOW THEREFORE, if the Obligee (School Board) shall accept the bid of the Principal (Design Build) and the Principal shall enter into a Contract with the Obligee in accordance with the terms of such bid and give said bond or bonds as may be as specified in the bidding or contract documents with good and sufficient surety for the faithful performance of such contract and for the prompt payment of labor and material furnished ... or in the event of the failure of the Principal to enter such Contract and give such bond or bonds, if the Principal shall pay to the Obligee the difference not to exceed the penalty hereof between the amount as specified in said bid and such larger amount for which the Obligee may in good faith contract with another party to perform the Work covered by said bid, then this obligation shall be null and void, otherwise to remain in full force and effect.
The School Board argues that the above-quoted language guaranteed that Design Build would sign the contract and furnish the payment and performance bond, which it did not do. According to the School Board, Patterson is, therefore, liable on the bid bond for five percent of Design Build's bid amount. We disagree.
The School Board has excised this portion of the text from the bid bond and would have us adopt a literal and out-of-context interpretation of this language. While we do recognize that, by its terms, the bid bond insures that the bidder sign the contract and furnish the bond once the bid is accepted, it further provides that, if the bidder fails to do so, the surety pays for the difference between the bid amount and the amount the School Board, in good faith, would have to expend to have someone else perform the work not to exceed "Five Percent Greatest Amount of Bid Dollars." The bid bond, therefore, is intended to operate in the situation where, due to the bidder's failure to proceed with the project on acceptance of its bid, the public entity is required to expend additional resources and funds to secure an alternate contractor for the project. A bid bond is not intended to operate in a situation such as we have in the present case, where the contractor proceeds with the project, performs the work to substantial completion and is paid by the public entity. Security for payment for work performed on the project in the case sub judice was the mandatory payment and performance bond, which, in contravention of state law, the School Board failed to require of the successful bidder.[2] The School Board may *1050 not now avail itself of the bid bond to reduce its liability incurred as a result of its failure to comply with the Public Works Act. Our de novo review of the uncontested facts in the case sub judice reveals no genuine issue of material fact as to Patterson. We conclude, therefore, that the trial court properly granted Patterson's motion for summary judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. In accordance with La. R.S. 13:5112, we assess the costs of this appeal against the Caddo Parish School Board in the amount of $312.
AFFIRMED.
NOTES
[1] The fact that the bid bond was actually issued in the name of DBCS and the bid on the project was submitted under Design Build's contractor's license number was raised as an issue in the motion for summary judgment. In his ruling on summary judgment, the trial judge found the confusion of corporate names to be of no significance for purposes of enforcement of the bid bond and this finding has not been raised as an issue on appeal.
[2] Also note that La. R.S. 38:2218(A) provides that a public entity advertising for bids for work may require the bidders to attach a certified check, cashier's check or bid bond. Requirements of a bid bond, therefore, are permissive in nature and are susceptible to waiver. See L & M Demolition, Inc. v. City of New Orleans, 534 So.2d 27 (La.App. 4th Cir. 1988), writ denied, 537 So.2d 1173 (La.1989). This is in stark contrast to the mandatory requirement of performance bond of La. R.S. 38:2241(A)(2).