# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 11, 2010

No. 09-30529

Lyle W. Cayce
Clerk

PAUL DAVIS NATIONAL, SUBCHAPTER S CORPORATION

Plaintiff-Appellee

v.

CITY OF NEW ORLEANS

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, WIENER, SOUTHWICK, Circuit Judges.

PER CURIAM:

Defendant-Appellant City of New Orleans (the "City") appeals the district court's grant of the motion for partial summary judgment filed by Plaintiff-Appellee Paul Davis National, Subchapter S Corporation ("Paul Davis"). We affirm.

## I. FACTS AND PROCEEDINGS

The City and DNA Creative Media DNA Media Productions LLC ("DNA Media") entered into a memorandum of understanding for the construction of a recreation center to be located on the City-owned Comisky Park property. DNA Media was to construct, entirely at its expense, a recreation facility to be used in the production of a television series. The City was to provide the use of the land

No. 09-30529

but no other material support.   The City and DNA Media's arrangement contemplated that once the television production was completed, DNA Media would transfer ownership of the recreation center to the City without charge. The estimated cost of the recreation center was $3.2 million.

In December 2006, DNA Media contracted with Paul Davis to perform site preparation work for the recreation center, which Paul Davis then performed. Paul Davis completed the work and submitted its final invoice based on a cost of $715,643.30.  DNA Media paid Paul Davis a total of only $35,790.71: According to Paul Davis, DNA Media still owed $679,852.59.

Paul Davis brought the instant action against DNA Media and later added the City as a defendant.  Paul Davis alleged that the City had failed to comply with the mandatory provisions of Louisiana's Public Works Act (the "Act")[1] by not requiring DNA Media to post a payment bond, thus making the City solidarily liable on Paul Davis's claim for the cost of the work in Comisky Park.  In March 2009, Paul Davis filed a motion for partial summary judgment against the City. The district court granted that motion, and the City timely filed a notice of appeal.

## II. ANALYSIS

On appeal, the City makes two arguments: (1) LA. REV. STAT. § 33:4551 controls this transaction, not the Act as the district court held, and (2) even if the Act is the controlling law, the City is not liable under it because (a) the City did not contract to pay for any work, (b) the memorandum of understanding between the City and DNA Media is not a "public contract," and (c) Paul Davis is not a "claimant" within the meaning of the Act.

The City's first argument is not properly before us, so we do not address it. That contention was raised for the first time in the City's post-judgment Rule 60(b)(4) motion, which the district court denied.  In *Schwegmann Bank & Trust Co.*

_____

[1] LA. REV. STAT. § 38:2241 *et seq*.

2

*v. Simmons*[2] we held that "an appeal of the underlying judgment does not bring up a subsequent denial of a Rule 60(b) motion," and we are therefore "without jurisdiction to consider the [Rule 60(b)] issue further."[3]

As for the City's second argument, we have carefully reviewed the record on appeal, the assertions of counsel in their appellate briefs and at oral argument, the district court's opinion, and the applicable law of Louisiana. This has led us to reach the same conclusions as those reached by the district court, and has done so for the same reasons espoused by that court. As the district court's opinion provides a clear, comprehensive, and correctly reasoned analysis of all issues presented here, we adopt that court's opinion as our own, incorporate it herein by reference, and attach a copy as an appendix hereto.

Accordingly, for the reasons thus set forth by the district court in the attached opinion, the rulings of that court are, in all respects,

AFFIRMED.

---

[2] 880 F.2d 838 (5th Cir. 1989).

[3] *Id.* at 844-45.

No. 09-30529

**APPENDIX**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL DAVIS NATIONAL, SUBCHAPTER S CORP. | CIVIL ACTION |
| VERSUS | NO: 08-1174 |
| DNA MEDIA PRODUCTIONS D/B/A DNA CREATIVE PRODUCTIONS, LLC, ET AL. | SECTION: "A" (2) |

**ORDER AND REASONS**

Before the Court are a **Motion for Partial Summary Judgment Regarding Liability of the City of New Orleans (Rec. Doc. 29)** filed by plaintiff Paul Davis National, Subchapter S Corp. ("PDN"), and a **Motion for Summary Judgment Pursuant to FRCP 56 (Rec. Doc. 38)** filed by defendant the City of New Orleans ("the City"). Both motions are opposed. The motions, set for hearing on April 29, 2009, are before the Court on the briefs without oral argument. For the reasons that follow, PDN's motion is GRANTED and the City's motion is DENIED.

**I. BACKGROUND**

PDN filed suit against the defendants, including the City, to recover $679,852.59 for payment of work performed pursuant to a contract between PDN and defendant DNA Creative Productions, LLC. The motions presently before the

4

No. 09-30529

Court are cross motions on the issue of the City's liability for the unpaid amounts owed to PDN.

The City and DNA Creative Media and DNA Media Productions, LLC (hereinafter "DNA") entered into a Memorandum of Understanding ("MOU") pertaining to implementing a project called "ReNew Orleans Project" at the Comiskey Park site located in the Mid-City area of New Orleans.[4] (Pla. Exh. 1). The land at this site is owned by the City. Pursuant to the MOU, DNA would build and outfit a full-service community recreation center on the City's land. The rec center would be utilized initially as the setting for filming a televised series called "ReNew Orleans Television Series," which was to be produced and financed by DNA. (Pla. Exh. 1, MOU ¶ I.B). The series was intended to air on local and national television outlets and would not only showcase the construction project during its development but would also spotlight the City, its foods, culture, music, and all aspects of life in the City in the aftermath of Hurricane Katrina. (Id. ¶ II.C).

The MOU obligated DNA to secure all necessary funds to complete the project and to pay for *inter alia* set designers, architects, general contractors, construction and production crews, vendors, etc. (Id. ¶ I.C). Upon completion and wrap-up of the television series, DNA obligated itself to surrender possession of the community Center to the Mayor of the City as an unconditional donation and contribution of DNA to the City. (Id. ¶ ID). In exchange, the City agreed to designate a point of contact for the MOU and to provide ideas, suggestions, advice related to design plans, and those other aspects of the ReNew Orleans Project that related to NORD and the City. (Id. at II.E).

On December 20, 2006, DNA executed a contract with PDN, plaintiff herein, to provide work on the construction of the rec center. (Pla. Exh. A). PDN contends

---

[4] The Court cannot determine the date that this agreement was executed because the writing evidencing the date is illegible on the Court's copy.

5

that it developed working drawings, prepared the foundation, and performed pile driving services for an original contract price of $715,643.30 (Pla. Exh. C). PDN claims that DNA has failed to pay $679,852.59 for work performed under their contract. PDN sued DNA for the sums owed and added the City to the lawsuit via its Second Amended Complaint. (Rec. Doc. 20) PDN seeks to hold the City liable for DNA's default under the Public Works Act, La. R.S. § 38:2241, et seq.

PDN and the City now move for summary judgment on the City's liability to PDN under Louisiana's Public Works Act.

## II.    DISCUSSION

PDN argues that the ReNew Orleans project was a "public work" on immovable property owned by the City. Therefore, the Public Works Act mandated that the City require DNA to post a bond to guard against unpaid claims from parties supplying labor and materials for the construction of the project. PDN argues that the City, having failed to require such a bond from DNA, is liable to PDN for its unpaid invoices.

In opposition, and in support of its own motion for summary judgment, the City argues that the MOU was not a contract to construct a "public work" within the meaning of Louisiana's Public Works Act. The City also argues that PDN is not a "claimant" under the Act because it did not sign a contract with either the "owner" or a "contractor or subcontractor" within the meaning of the Act.

Both sides agree that no material facts are in dispute and that summary adjudication of the legal issues presented is appropriate.

The Public Works Act provides a detailed procedure in the letting of public contracts. Avallone Architectural Spec., LLC v. DBCS Corp., 839 So. 2d 1045, 1048 (La. App. 2d Cir. 2003). A "public contract" or "contract" means any contract awarded by any public entity[5] for the making of any public works or for the

---

[5] The Act defines "public entity" but the City does not deny that it is a public entity for purposes of the Act. See La. R.S. § 38:2211(A)(11).

purchase of any materials or supplies. La. Rev. Stat. Ann. § 38:2211(A)(10) (West 2005). A "public work" means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. Id. § 2211(A)(12).

La. R.S. § 38:2241 requires that whenever a public entity enters into a contract in excess of $5,000.00 for the construction of any public works, the contract shall be reduced to writing and signed by the parties. La. Rev. Stat. Ann. § 38:2241(A)(1) (West 2005). Further, for each contract in excess of $25,000.00, the public entity shall require of the contractor a bond in a sum of not less than 50 percent of the contract price for the payment by the contractor or subcontractor to "claimants." Id. § 2241(A)(2). A "claimant" means any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works . . . ." La. Rev. Stat. Ann. § 2242(A) (West 2005). A "contractor" means any person or other legal entity who enters into a public contract. La. R.S. § 38:2211(A)(5).

The purpose of requiring a bond in connection with construction of public works is to protect the public authority from loss and expense arising out of the failure of the contractor to faithfully perform the contract. Avallone, 839 So. 2d at 1048 (citing Town of Winnsboro v. Barnard & Burk, Inc., 294 So. 2d 867 (La. App. 2d Cir. 1974)). A public entity that fails to secure the payment bond required by the statute will be liable to claimants for labor performed and materials supplied in the construction of a public work. See Police Jury of Parish of Avoyelles v. Gaspard, 108 So. 128, 130 (La. 1926).

It is undisputed that the City did not require DNA to post a payment bond to ensure that all contractors and subcontractors on the ReNew Orleans project would be paid. It is also undisputed that the City did not contract directly with PDN for services or materials. Therefore, the City will only be liable to PDN if

state law mandated that the City require a bond. The elements that trigger the bond requirement are found in La. R.S. § 38:2241.

Section 2241 mandates a bond for each contract in excess of $25,000.00. The MOU is clearly a contract in the generic legal sense but for purposes of the Public Works Act "a contract" is one awarded by a public entity for the making of a public work, and a "public work" includes the alteration or improvement of immovable property owned by a public entity. The City is undisputedly a public entity and it owned the land at the Comiskey Park site. The full-service community recreation center that DNA proposed to build was an improvement on immovable property owned by the City. Therefore, the MOU contract that the City awarded to DNA to build the community rec center was a "public contract," and DNA, as a legal entity that entered into a public contract, was a "contractor" under the Act.

The statute also requires that the contract be in excess of $25,000, and the City reads this to mean that the Act is only triggered when the contract requires remuneration by the public entity for services. Even though the ReNew Orleans project was valued at well over $25,000.00,[6] the City contends that the contract was not one in excess of $25,000.00 because no public funds were to be expended to build the community center.

The City's position is not supported by the text of Section 2241 and is contrary to the overarching purpose of the Act. The statute does not state that a bond is mandatory when the contract at issue requires the public entity to expend in excess of $25,000.00. Rather, the statute is worded more broadly and requires a bond "for each contract in excess of twenty-five thousand dollars per project" without limiting the bond requirement in the way that the City suggests. La. R.S. § 38:2241(A)(2). Furthermore, limiting the application of the bond requirement as the City urges is inconsistent with the purpose of the Act which is to protect the

---

[6] The MOU estimated the construction component of the project at $3.2 million dollars. (Pla. Exh. 1 ¶ II.D.1).

public fisc from exposure to losses that result when the contractor does not fulfill its own contractual obligations, including paying its subcontractors and suppliers. The issue of whether a public entity will ultimately be on the hook to compensate unpaid laborers and suppliers is separate and apart from whether the public entity was obligated to expend public funds on the contract. The Louisiana Legislature has determined that $25,000.00 is the maximum risk that public entities should take on when contracting for public works and thus the Legislature clearly declined to word the statute so as to lead to the result that the City urges. And it cannot be ignored that by requiring a bond for contracts in excess of $25,000.00 regardless of the actual dollar amount that the contract requires the public entity to spend, laborers and suppliers who cannot avail themselves of the remedies offered by the Private Works Act, La. R.S. § 9:4801, et seq., also get assurance that they will be compensated when working on public works for a public entity.

The City argues that the Public Works Act does not apply because the MOU made DNA the "owner" of the property, and because the City was no longer the owner, the construction at the Comiskey Park site was not a "public work." In that same vein the City argues that PDN is not a "claimant" under the Act because DNA owned the property.

Contrary to the City's contention, the MOU did not transfer ownership of the immovable property owned by the City, and no provision in the MOU even purports to do so. The MOU simply authorized DNA to build the community center on the City's land, and then to donate the facility to the City at the conclusion of the television series. Louisiana law specifically recognizes that an owner of immovable property can authorize another to build improvements on the property and maintain ownership of those improvements separate from the land. See La. Civ. Code art. 493. Thus, the City always owned the land at Comiskey Park, and the rec center, even if owned initially by DNA prior to the anticipated donation, was an improvement on that immovable property.

9

No. 09-30529

Finally, PDN is clearly a "claimant" as that term is defined in the Act. PDN contracted with DNA, who was the contractor, and PDN claims that it is due money under that contract for services and labor. PDN fits squarely within the definition of a "claimant." <u>See</u> La. R.S. § 38:2242(A).

In sum, it was obvious to the City that the contract with DNA involved major construction work on public property for improvements that would entail the hiring of numerous subcontractors and suppliers. Any contractor willing to undertake a $3.2 million dollar construction project that would later be donated to the City would surely not have cancelled the project had the City required a bond to protect not only itself but the subcontractors that DNA would eventually hire. Having failed to perform this act of due diligence the City now becomes liable to PDN.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment Regarding Liability of the City of New Orleans (Rec. Doc. 29)** filed by plaintiff Paul Davis National, Subchapter S Corp. is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment Pursuant to FRCP 56 (Rec. Doc. 38)** filed by defendant City of New Orleans is **DENIED**.

May 7, 2009

---

JAY C. ZAINEY

UNITED STATES DISTRICT JUDGE