WELCH, J.
13Appellants, Lamar Contractors, Inc. (Lamar) and Hartford Casualty Insurance Company (Hartford), appeal a judgment *227 entered against Hartford awarding subcontractors Mayeux’s Air Conditioning & Heating, Inc. (Mayeux’s) and Brown Drywall and Coating, Inc. (Brown) the principal amounts of their claims and attorney fees, as well as the assessment of all costs of the concursus proceeding to Hartford. We affirm in all respects.
BACKGROUND
The facts forming the basis for this lawsuit are essentially undisputed. On January 29, 2007, Glencoe Education Foundation, Inc. d/b/a Virgil Brown Glencoe Charter School (Glencoe) entered into a contract with Lamar for the construction of a new building at its charter school in Franklin, Louisiana (sometimes referred to as “the project”). The construction contract was recorded with the clerk of court for St. Mary Parish on March 9, 2007. Hartford issued two bonds on the project to Lamar, a performance bond securing Lamar’s performance, and a payment bond, securing payment to all persons, firms, and corporations furnishing labor or materials on the construction project. Each of the bonds was issued in the amount of $3,178,000.00.
On February 2, 2007, Lamar entered into a written subcontract with Brown to furnish all materials and labor to install a complete painting system on the project for the lump sum price of $124,420.00. Lamar entered into a written subcontract with Mayeux’s to provide all materials and labor to install a complete HVAC system for the lump sum price of $214,827.00.
Brown’s and Mayeux’s satisfactory performance of their contractual duties on the construction project is not disputed. During the course of the project, however, disputes between Glencoe and Lamar arose over the work. Glencoe withheld payment of the remaining balance owed to Lamar and on July 23, 2008, |.¡Glencoe filed and recorded a notice of termination of the contract. In response, on September 16, 2008, Lamar filed a lien and statement of claim against Glencoe in the mortgage records for the sum of $380,850.19, representing the balance claimed to be due for general contract services and labor provided. Various subcontractors on the project also filed statements of claim and privilege into the mortgage records. On August 20, 2008, Brown filed a statement of claim or privilege against Lamar, Glencoe, and Hartford in the amount of $52,339.73, the balance it claimed was due for materials and services. On September 8, 2008, May-eux’s filed a statement of claim against Lamar, Glencoe, and Hartford for the sum of $30,420.00, representing the balance due for finished work on the project. The Sherwin-Williams Company, which provided materials to Brown on the project, also filed a statement of claim or privilege against Brown, Glencoe, Lamar, and Hartford in the amount of $4,937.46, the balance claimed for materials and services furnished on the project.
On October 1, 2008, Lamar filed a lawsuit seeking damages for breach of contract against Glencoe in the 16th Judicial Court. On October 3, 2008, Glencoe filed this concursus proceeding in that same court against Lamar, Brown, Mayeux’s, Sherwin-Williams, and two other subcontractors, Chuckleberry’s Commercial Floors, Inc. and Premier Steel Fabrication & Construction, LLC, seeking cancellation of their recorded claims from the mortgage records on the basis that there was a payment bond in effect for the project. Glencoe requested that all defendants be ordered to appear and reserve their claims to the payment bond, that it be deemed to be relieved of all liability to all claimants, and that the clerk of court be ordered to cancel all recorded claims.
*228 In the concursus proceeding, in October of 2008, Brown filed a claim against the payment bond, alleging that amicable demand for payment had been made on the principal and surety without payment being made, and that pursuant to [Sits properly recorded claim and La. R.S. 38:2246, it is entitled to an award of ten percent attorney fees on the amount recovered. It also filed a reconventional demand against Glencoe and a third party demand against Lamar and Hartford, seeking to recover the unpaid balance of $52,339.73 for furnishing labor and materials on the construction project, as reflected in its recorded claim, as well as interest and court costs. Mayeux’s filed a claim against Lamar and Hartford in the concursus proceeding, asserting that more than 30 days had lapsed since amicable demand without a payment being made. It sought to recover the full amount of its recorded claim as well as ten percent attorney fees on the amounts recovered. Both subcontractors submitted evidence in connection with their claims.
A threshold procedural dispute arose regarding whether the Public Works Act or Private Works Act governed the concursus proceeding. Lamar asserted that Glencoe is not a “public entity” and the work was not a “public work” as defined by the Public Works Act, and the trial court agreed, holding that the Private Works Act applied to the proceeding. This court reversed that ruling, holding that Glencoe may proceed under the Public Works Act. Glencoe Education Foundation, Inc. v. Clerk of Court and Recorder of Mortgages for the Parish of St. Mary, Louisiana, 2008-2404 (La.App. 1st Cir.12/9/08) (unpublished). The supreme court declined to review that ruling. Glencoe Education Foundation, Inc. v. Clerk of Court and Recorder of Mortgages for the Parish of St. Mary, Louisiana, 2008-2892 (La.12/12/08), 996 So.2d 1122.
On January 5, 2009, the trial court entered judgment dismissing, with prejudice, all claims and causes of action against Glencoe, relieved Glencoe for personal liability on the claims asserted by Lamar, the subcontractors, and Sherwin-Williams, and directed the clerk of court to cancel all claims filed against Glencoe in the public records. In so doing, the court noted that it reviewed the certificate of no objection to the bond filed by the clerk of court. Lamar filed a ^motion for a new trial, which was granted in part by the trial court to preserve Lamar’s claims against Glencoe that were pending in the breach of contract lawsuit filed in another division of the court.
Thereafter, on March 1, 2010, Brown filed a motion to set the summary hearing and trial of all issues and claims pending in the concursus proceeding. In opposition to that motion, Lamar and Hartford asserted that neither Brown, nor any of the other claimants in the concursus proceeding, is entitled to recover any amount from them under the payment provisions of the Lamar subcontracts. Specifically, they relied on the “pay if paid” clauses found in the Lamar subcontracts, which makes payment by Glencoe to Lamar a “suspensive condition” or condition precedent to the obligation of Lamar to pay its subcontractors. Paragraph 18(c) of the Lamar subcontracts provides as follows:
Payment by Owner to General Contractor shall be a suspensive condition (condition precedent) to the obligation of the General Contractor to pay the Subcontractor. The Contractor shall not be obligated to make any payment to Subcontractor under this contract unless and until General Contractor from the Owner receives payments.
Lamar argued that it could not be held liable to the claimants because Glencoe *229 failed to remit the balance due on the general contract to Lamar. Hartford argued it was entitled to the benefit of the “pay if paid” clauses, urging that because the principal, Lamar, could not be held liable for the balance owed to the subcontractors because it had not received final payment from Glencoe, under the law of suretyship, it could not be held liable to the subcontractors on the payment bond. In support of its position, Hartford relied on two fundamental principles of surety-ship law providing that: (1) a surety cannot be bound to an obligee to any greater extent than the obligation contained in the agreement between the obligor and the obligee, and (2) a surety may assert any defense to the principal obligation against the creditor that the principal could assert except the lack of capacity or |7discharge in bankruptcy. Lamar and Hartford also disputed the subcontract amount due Brown, contending that Brown did not have one change order approved in the amount of $2,973.60 and that the actual amount of the balance due Brown is $43,371.94, not $52,339.73 as reflected in Brown’s recorded statement. They offered evidence of a check written by Lamar to Sherwin-Williams, one of Brown’s suppliers, on November 13, 2009, in the amount of $5,944.20, seeking a credit against the balance owed to Brown. Lamar and Hartford also urged that Brown was not entitled to attorney fees because Brown is not owed the amount set forth in its recorded claim. Lastly, Lamar and Hartford asked that the claims asserted in the concursus proceedings be denied, and that an order be issued staying the proceedings pending the settlement or adjudication of Lamar’s pending breach of contract lawsuit against Glencoe.
On April 27, 2010, the trial court held a trial on the merits of the subcontractors’ claims, in which the only claimants were Brown and Mayeux’s. The court dismissed the claims of Premiere Steel and Chuckleberry’s at the hearing on the basis that neither asserted their claims in the proceeding. Thereafter, on May 4, 2010, the trial court signed a final judgment dismissing the claims of Sherwin-Williams, Premiere Steel, and Chuckleberry’s with prejudice. It dismissed Mayeux’s and Brown’s claims against Lamar as premature. The court then entered judgment in favor of Mayeux’s and against Hartford in the full amount of its principal claim, $30,420.00, with interest and attorney fees pursuant to La. R.S. 38:2246(A) in the amount of $3,042.00, plus costs. Judgment was also rendered in favor of Brown against Hartford in the full amount of its principal claim, $52,339.73, -with interest, less a credit of $5,994.00 for the amount paid by Lamar to Sherwin-Williams for paint supplies, together with attorney fees in the amount of $5,233.97, plus costs. Additionally, the court taxed all costs of the concursus proceedings to Hartford.
|sThis appeal followed, in which Lamar and Hartford (referred to hereafter collectively as “Hartford”) contend that the trial court erred in finding Hartford obligated to pay any amounts to the subcontractors, in awarding attorney fees to Brown and Mayeux’s, and in assessing Hartford with all costs of the concursus proceeding.
HARTFORD’S LIABILITY

Subcontractors’ claims for payment

In this appeal, Hartford does not contest the amount owed on the claims asserted by subcontractors Brown and Mayeux’s for work performed on the project. Instead, Hartford asserts that the trial court erred in finding that it could be liable to the subcontractors for any amount when the trial court ruled that principal debtor, Lamar, was not liable to the subcontractors based on the “pay if paid” suspensive *230 condition payment clauses in Lamar’s subcontracts with Brown and Mayeux’s. Hartford insists that it is entitled to the protection afforded by the “pay if paid” clause in Lamar’s subcontracts with Brown and Mayeux’s and argues that under the law of suretyship, a surety for a contractor cannot be held liable to the subcontractor unless the contractor is liable. It points to the definition of surety-ship as an accessory promise that binds one to fulfill the obligation of another found in La. C.C. art. 3035, as well as the general rules of suretyship law providing that a surety cannot be bound to an obli-gee to any greater extent than the obligation contained in the agreement between the obligor and obligee, and allowing a surety to assert any defense to the principal obligation that the principal obligor could assert except lack of capacity or bankruptcy discharge against a creditor. See La. C.C. art. 3046; Commercial Union Insurance Company v. Melikyan, 430 So.2d 1217, 1221 (La.App. 1st Cir.1983). Hartford contends that general principles of suretyship law control its payment obligation on the bond and allow it to assert the same defense to payment that Lamar could under the 19subcontracts. Hartford points to another provision of the Lamar subcontracts as the source of its right to raise the lack of a final payment by Glen-coe to Lamar as a defense. This provision states that “no payment, partial or final shall be due or owed to the Subcontractor from Contractor’s surety unless and until, as a condition precedent, Contractor receives payment for Subcontractor’s work from Owner.” Therefore, Hartford contends, under suretyship law and the provisions of the contract, it had the right to raise the “pay if paid” clauses as a defense to payment to the contractors.
At the outset, we note that the trial court did not hold that Lamar was not liable to the subcontractors; rather, it dismissed the claims against Lamar as premature. However, regardless of how the trial court’s action is characterized, the issue presented in this appeal is whether a surety, which has issued a statutory bond governed by the provisions of the Public Works Act, may rely on a “pay if paid” clause in a principal’s subcontract as a defense to payment of sums owed to subcontractors which have performed work and supplied materials on a public construction project. For the reasons that follow, we conclude it may not.
The Public Works Act was enacted for the purpose of protecting persons doing work, performing labor, or furnishing material for the construction, alteration, or repair of public works. Construction Materials, Inc. v. American Fidelity Fire Insurance Company, 388 So.2d 365, 366 (La. 1980). It accomplishes this objective by mandating that the public entity require of the contractor a bond with a solvent surety in a sum of not less than fifty percent of the contract price “for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242.” La. R.S. 38:2241(A)(2). “Claimants” include those who perform labor on or furnish materials or supplies used in the construction, alteration, or repair of public works. La. R.S. 38:2242. The payment bond required to be furnished by the contractor is in the nature of a statutory bond, and |inthe act expressly states that “no modification, omissions, additions in or to the terms of the contract, in the plans or specifications, or in the manner and mode of payment shall in any manner diminish, enlarge, or otherwise modify the obligations of the bond.” La. R.S. 38:2241(A)(2). Moreover, Paragraph C of La. R.S. 38:2241 provides that:
The payment provisions of all bonds furnished for public works contracts described in this Part, regardless of form *231 or content, shall be construed such and deemed statutory bond provisions. Any such bond which fails to contain any of the requirements set forth in this Part shall be deemed to incorporate all of the requirements set forth in this Section. Language in any such bond containing any obligations beyond the requirements set forth in this Part shall be deemed surplusage and read out of such bond.
The payment bond serves as an additional fund or security to assure that those who perform work on public projects receive payment for their work in the event of a contractor’s inability to fulfill its payment obligations. It insures against unpaid claims from parties supplying labor and materials for the construction of public works. Scott v. Red River Waterway Commission, 41,009, p. 6 (La.App. 2nd Cir.4/12/06), 926 So.2d 830, 835, writ denied, 2006-1153 (La.9/15/06), 936 So.2d 1269.
The Public Works Act also gives laborers and suppliers the right to assert claims against the public entity by filing a sworn statement of the amount due in the mortgage records. As explained by the supreme court in Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990) (quoting Pigeon-Thomas Iron Co. v. Drew Bros., 162 La. 836, 839, 111 So. 182, 183 (1926)), the Public Works Act protects workers and suppliers engaged by agencies of this state for the construction and improvement of public property by giving them, in effect, “a privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.”
The bond requirements of the Public Works Act also serve to protect the | npublic entity from loss and expense arising out of the failure of the contractor to faithfully perform the contract. In essence, the payment bond transfers the risk that a contractor will be unable to perform its contractual obligations from the public entity to the surety. Wilkin, 561 So.2d at 71; Avallone Architectural Specialties, L.L.C. v. DBCS Corporation, 36-971, p. 4 (La.App. 2nd Cir.3/5/03), 839 So.2d 1045, 1048; 2 Bruner and O’Conner on Construction Law, § 5:235. If the public entity has complied with the requirements of the Public Works Act and the requisite bonds have been issued, it may escape liability to Public Works Act claimants by filing a bond of a surety “to guarantee payment of the obligation secured by the privilege.” La. R.S. 38:2242.2(A). It may then initiate a eoneursus proceeding citing all claimants and the contractor, subcontractor and surety on the bond, in which all claims must be asserted. La. R.S. 38:2243. If the surety is deemed solvent, the public entity is relieved of any personal liability and the recorder of mortgages must cancel all recorded claims. La. R.S. 38:2244.
The issue of whether a surety which has issued a payment bond governed by the provisions of the Public Works Act can assert a conditional payment provision contained in the principal’s contract with subcontractors as a defense to payment is res nova in Louisiana. However, a number of other jurisdictions have addressed the issue of whether a surety may assert a principal’s “pay if paid” clause as a defense to payment to a subcontractor in similar contexts. In Moore Brothers Company v. Brown & Root, Incorporated, 207 F.3d 717, 723 (4th Cir.2000), a federal appellate court, applying Virginia law, held that a surety could not assert the principal’s defense based on “pay when paid” language in a subcontract as a defense to its liability to pay subcontractors performing work on a project where the surety did not expressly incorporate the “pay when paid” condition precedent into the contract bond. *232 The court noted that the very purpose of a surety bond contract is to insure that claimants who perform work are paid for their work on a [ 12project in the event that the principal does not pay. The court found the suggestion that nonpayment by an owner of a project absolved the surety of its obligation to be “nonsensical, for it defeats the very purpose of a payment bond.” Id.
In Brown & Kerr, Incorporated v. St. Paul Fire and Marine Insurance Company, 940 F.Supp. 1245 (N.D.Ill.1996), a federal district court held that a surety could not assert a “pay when paid” clause as a defense to payment under a payment bond. Therein, a subcontractor sought to recover under a payment bond for money due on work performed for the general contractor, which had not been paid by the owner. The court observed that the proposition that the inability to proceed against a general contractor because of a “pay when paid” clause in a subcontract prevented recovery against a surety under a payment bond ran counter to the purpose of the payment bond — the assurance of payment to subcontractors. Moreover, the court noted, the bond issued by the surety did not condition payment to subcontractors on the owner paying the principal, nor did it incorporate the terms of the subcontract. The clear and unambiguous terms of the bond provided that if the principal promptly paid the subcontractor, any obligation by the surety was void; however, if the subcontractor did not receive payment within ninety days after finishing work, the subcontractor could sue on the bond. Because the subcontractor satisfactorily performed under the subcontract and had not received payment, the court found the surety liable to the subcontractor. Accord OBS Company, Inc. v. Pace Construction Corporation, 558 So.2d 404 (Fla.1990) (holding that the sureties on a private works project were liable on a statutory payment bond issued to a contractor which had not yet been paid by the owner under the clear terms of the bond, which in no way conditioned recovery under the payment bond on the owner making final payment to the contractor. The court also stated that to allow nonpayment by the owner to prevent recovery both under the subcontract and the payment bond would thwart the entire purpose and scheme 11sof the state’s mechanics’ lien law and statutes allowing the security of the payment bond to substitute in place of attaching a lien against the owner’s property); Everett Painting Company, Inc. v. Padula & Wadsworth Construction, Inc., 856 So.2d 1059 (Fla.App. 4th Dist.2003) (holding that even if a payment bond issued by a surety contained language conditioning payment on receipt of payment by the contractor from the owner, such would violate the state’s public works statute, the purpose of which is to protect subcontractors and suppliers by providing them with an alternative remedy to mechanic’s liens on public projects).[1]
Similarly in this case, the subcontractors are proceeding under the payment bond, in which Hartford agreed to be bound to Glencoe and those who furnished labor or materials in connection with the construction of the charter school for payment in the amount of $3,178,000.00, with its principal, Lamar, jointly and severally. The bond sets forth that if Lamar promptly made payment to those performing la *233 bor and material used in connection with the construction of the project, including that by a subcontractor, the obligation “shall be void, otherwise to remain in full force and effect.” With the issuance of a bond, Hartford bound itself to pay the up to the amount of the bond in the event of nonfulfillment or nonperformance of the contractor’s payment obligations for the public works contract. See Scott, 41,009 at p. 6, 926 So.2d at 835. The bond issued by Hartford contains no conditional payment provision. The conditions triggering Hartford’s liability under the bond have clearly been met: Brown and Mayeux’s performed work in connection with the Glen-coe public works project, and they did not promptly receive final payment from Lamar. Therefore, under the terms of the payment bond, Hartford is liable to pay Lamar’s subcontractors the balance owed | ]4for their work on the Glencoe construction project as Lamar has not fulfilled its payment obligation to the subcontractors for their completed work on the project.
Additionally, the Public Works Act is sui generis and provides exclusive remedies to parties engaged in public construction work. State through Division of Administration v. McInnis Brothers Construction, 97-0742, p. 9 (La.10/21/97), 701 So.2d 937, 944. Because the Public Works Act contains specific provisions governing statutory payment bonds, the general principles of suretyship law relied on by Lamar and Hartford do not control a determination of the surety’s liability on the bond. The Public Works Act does not contain language authorizing the issuance payment bond conditioned on the receipt of payment by the contractor from the owner. Instead, it specifically precludes the insertion of any provision in the contract, the plans or specifications, or the manner of payment that would in any manner “diminish ... or otherwise modify the obligations of the bond.” La. R.S. 38:2241(A)(2). Any bond which fails to contain any of the requirements set forth in the Public Works Act shall be deemed to incorporate all the requirements of the Act. We conclude that allowing a surety to assert a “pay if paid” clause to defeat payment to a subcontractor on the basis that the contractor has not received full payment from the owner, where the owner has escaped liability to the subcontractors by relying on the payment bond, would render the protections afforded to laborers and suppliers on public works projects set forth in the Public Works Act meaningless. The application of traditional suretyship law principles in this scenario is contrary to the Act’s avowed purpose of providing a source of security to those performing work and furnishing materials on public projects. Because the contractual provision on which Hartford relies is contrary to the purpose of the Public Works Act, we hold that Hartford may not assert the “pay if paid” provisions of the Lamar subcontracts to defeat its liability to pay I ^subcontractors pursuant to the terms of the statutory bond.[2] Therefore, the trial court correctly entered an award in favor of Brown and Mayeux’s claims for the unpaid balances for work performed and material supplied on the Glencoe construction project.

Attorney fees

The Public Works Act authorizes any claimant “recovering the full amount of his timely and properly recorded or sworn claim” to recover ten percent attorney fees, which shall be taxed in the judgment on the amount recovered. La. R.S. 38:2246. Mayeux’s and Brown were *234 awarded ten percent attorney fees on the amounts recovered. Hartford contends that the trial court erred in awarding Brown attorney fees because it did not recover the full amount stated in its recorded claim.
The record reflects that Brown filed a Statement of Claim in the amount of $52,339.73, which included a balance owed to its paint supplier, Sherwin-Williams, in the amount of $5,994.00. Sherwin-Williams filed its own claim against Lamar and Hartford in the concursus proceeding, which was settled on November 13, 2009, more than a year after the filing of petition for concursus, when Lamar wrote Sher-win-Williams a check in the amount of $5,944.20. The trial court entered judgment in favor of Brown in the full amount of its recorded claim, $52,339.73, subject to a credit of $5,944.00 for the amount paid by Lamar to Sherwin-Williams.
Brown urges that it did recover the full amount of its claim, pointing out that the trial court recognized the total amount of its lien claim and properly granted judgment in favor of Brown on the amount of the entire claim less a credit for the amount paid to one of its suppliers by Lamar. It submits that Hartford should not be entitled to defeat its statutory attorney fee claim as Lamar’s action in paying one | KjOf the suppliers was tantamount to an admission that the total amount was due and owing at the time the claim was recorded and asserted in the concursus proceeding. We agree.
The purpose of the attorney fee provision of the Public Works Act is to encourage and promote amicable settlement of claims arising from public works contracts to the end that persons furnishing materials, supplies, and labor on such projects will be paid promptly, thus avoiding inconvenience, delay and expense occasioned by litigation. Interstate School Supply Company, Inc. v. Wilson, 368 So.2d 189, 190 (La.App. 1st Cir.1979). Because it is penal in nature, the attorney fee provision is subject to the rule of strict construction. Id. Employing this rule of construction, we find that the statute authorizes an attorney fee award to Brown, as judgment was entered in Brown’s favor on the full principal amount of its recorded claim by the trial court. Hartford denied liability on Brown’s claim, forcing Brown to litigate its recorded claim and to suffer a substantial delay in payment. The payment by Lamar to one of Brown’s suppliers during the course of the concursus proceeding should not defeat Brown’s statutory right to recover attorney fees on its claim. Accordingly, we find no error in the trial court’s award of attorney fees to Brown.

Court costs

In its final assignment of error, Hartford contends that the trial court erred awarding all costs of this proceeding against Hartford.[3] We disagree.
Louisiana Code of Civil Procedure article 1920 provides that costs shall be paid by the party cast and that the court may render judgment for costs, or any part thereof, as it may consider equitable. Louisiana Code of Civil Procedure article 4659 provides for assessment of costs in a concursus proceeding. It contains specific rules regarding proceedings in which money had been deposited into the [ 17court, but provides that in other instances, the court may render judgment for costs it considers equitable. La. C.C.P. art. 4659. Because this proceeding did not involve a deposit of money into the registry of the court, the court was free to assess costs in any equitable manner.
*235 A trial court’s assessment of costs will not be reversed on appeal in the absence of an abuse of discretion. Allen v. Baton Rouge General Medical Center/General Health System, 2009-1110, p. 6 (La.App. 1st Cir.12/23/09), 30 So.3d 127, 131, writ denied, 2010-0195 (La.4/5/10), 31 So.3d 368. In this case, the concursus was instituted by Glencoe to obtain a release of liability to subcontractors and the suppliers on the project by relying on the payment bond issued by Hartford. Those who had filed claims against Glencoe were cited to appear and assert those claims against the payment bond. The trial court ultimately determined that Hartford was liable to pay those claimants who asserted their claims in the concursus proceeding. Under these circumstances, we find no abuse of the trial court’s great discretion in assessing all costs of the concursus proceeding to Hartford.
CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants, Lamar Contractors, Inc. and Hartford Casualty Insurance Company.
AFFIRMED.

. But see Wellington Power Corporation v. CNA Surety Corporation, 217 W.Va. 33, 614 S.E.2d 680 (2005), the court permitted the surety to assert a "pay when paid” clause in a subcontract to avoid liability, reasoning that the public policy behind freedom to contract outweighed the public policy of securing payment for work performed by laborers underlying that state’s public bond statutes.

. There has been no claim by Hartford that the subcontractor’s work was deficient in any way, nor does it claim in this appeal that the amounts of their claims are erroneous.

. Brown and Mayeux’s do not address this argument in their briefs.