REDMANN, Judge.
Lambert Brothers, Inc., a furnisher of electrical materials for a building, appeals from the dismissal of general contractor Oxford Enterprises, Inc., surety Lewis Clements and owner Ziegler Limited Partnership (Charles W. Ziegler, III, Partner) from its suit for the price, with recognition of privilege, for the materials it furnished to subcontractor Walter Bourgeois.
The principal questions are, first, whether failure to serve the claim upon the owner by “registered” mail (plaintiff used certified) or personal service, La.R.S. 9:4802, defeats the privilege and, second, whether the general contractor’s (and other general contractors’) practice of making the materi-alman a co-payee on checks paying the subcontractor discharges the materialman’s claim as to the general contractor and surety. We answer no to each question and we therefore reverse.

The Privilege

The stricti or strictissimi juris rule of interpreting the law of privileges arises from La.C.C. 3185 (and its forebears), permitting privilege only where “expressly granted” by law. The reason for the strict limitation of privileges is evident in C.C. 3183: creditors take the proceeds of their debtor’s assets prorata “unless there exist among the creditors some lawful causes of preference.” Privilege allows the preferred creditor to be paid in full before unprivileged creditors, and thus defeats in part the law’s fundamental rule of equal, prorata treatment of creditors: privilege takes from the unprivileged creditors money that otherwise would be available for their payment. For that reason C.C. 3185 naturally provides that there can be no privilege unless the law expressly grants it.
But La.R.S. 9:4801A does expressly grant the privilege;[1] thus the question is simply whether the materialman has sufficiently followed the procedure of R.S. 9:4802 so as to preserve the privilege which the law has expressly granted.
§ 4802 enables the owner to protect himself and his property from liability to claimants whose labor or material will have improved the property, by promptly recording in the mortgage records the contract for the improvement with a solvent surety’s bond for the payment of all claimants. (This much the owner here did; but it did not file a concursus proceeding, ten days after filing which it and its property would be discharged in the absence of objections to the bond; § 4805).
§ 4802 also provides that each claimant granted a privilege by § 4801 shall, within a specified time,
serve upon the owner a sworn detailed statement of his claim ... by registered [2] mail or personal service and shall record a sworn statement showing the total amount of his claim .
The claim recorded as above set forth, shall preserve the privilege against the property for a period of one year from the date of its recordation and may be enforced by a civil action . . .. The effect of the recordation of the claim shall cease and the privilege preserved by this recordation shall preempt unless a notice of filing of suit ... is re *951 corded within one year from the date of the recordation of the inscription of the said claim. . . . (Emphasis added.)
The statute simply does not purport to make preservation of the privilege depend upon service upon the owner. The emphasized words indicate, to the contrary, that it is the recordation which preserves the privilege. (Moreover, it is “recorded claims” which prompt a concursus, § 4804, and “recorded claimants” who must object to the bond, § 4805; no mention is made of claimants who recorded and served their claims.)
Serving the owner is, apparently, a prerequisite only to the owner’s personal liability. § 4806 provides that, if the bond is successfully objected to (but the contract was timely recorded), the owner is personally liable to claimants “who recorded and served their claims as provided in R.S. 9:4802 . . ..” (Emphasis added.)
We therefore hold that service upon the owner is not a prerequisite under R.S. 9:4802 to preservation of the materialman’s privilege; proper recordation of the claim suffices.
(The question whether the owner is personally liable under § 4806 is not presented. Plaintiff’s petition did not allege any objection to the bond, and its attempted introduction of testimony of the surety’s insolvency was therefore properly denied by the trial court.)

Materialman as Co-Payee

By agreement among contractor, subcontractor and supplier, the contractor’s checks paying the subcontractor were made payable to him and to the materialman.
The practice in respect to the progress payments was that the contractor required statements from the subcontractor by a certain date and the contractor would pay those statements within, say, a week or two. The subcontractor obtained from the materialman a statement giving the total of materials purchased for the job in question, and added to that total an amount for labor, etc., submitting the new total to the contractor. The contractor deducted a 10% retainage and drew the check to subcontractor and materialman jointly. The subcontractor delivered the check to the mate-rialman, which paid to itself the amount it had reported to the materialman as owed, and paid the balance to the subcontractor.
These arrangements kept the material-man’s account reasonably current at the time of each payment to the subcontractor. However, more charges for material were constantly added to the account. Thus, it would again build up and substantial amounts would again become due.
Presumably these arrangements would have sufficed for the full payment of the materialman, had they continued through completion of the contract. But some un-detailed problem caused the general contractor to terminate the subcontract and to make no more payments to the subcontractor. The result was that the materialman is owed $21,434.84.[3]
The conclusion that the contractor and surety do not owe the materialman the $21,434.84 that the subcontractor owes on this building has two premises. First, it is argued that the general contractor has paid about $10,000.00 of that $21,000.00 because the general contractor made the material-man co-payee on every check it paid to the subcontractor; and that of the total of $55,-000.00 the materialman kept “only” $45,-000.00 (leaving the other $10,000.00 for the subcontractor’s labor, overhead, other mate-rialmen, etc.). Second, it is argued that other general contractors, paying this same subcontractor for material and labor on other buildings for other owners, similarly made plaintiff materialman a co-payee (in amounts not even shown), and that plaintiff again returned part of the subcontract payments to the subcontractor instead of keeping all payments and applying them to the debt for this building.
*952 The error of each of these arguments is non-recognition of the necessity that labor, too, be paid out of progress payments to a subcontractor.
The trial judge reasoned that plaintiff, after having made the arrangements to be co-payee to protect itself, forsook those arrangements by retaining only part of the check proceeds and therefore cannot again collect those payments. This reasoning gives improper effect to those arrangements. A simple agreement to make the materialman co-payee on progress payments does not constitute an agreement that the materialman is to retain 100% of those payments. Every contractor, every subcontractor and every materialman knows that progress payments pay labor as well as material (presumably in different proportions in different subcontracts). It would be pointless for the contractor to agree that progress payments should go entirely to a materialman: such an agreement might protect against materialmen’s liens, but it would not protect against laborers’ liens and, to the contrary, would make it more probable that laborers’ liens would be filed. The reasonable person would neither demand nor agree that the material-man be paid more than he is owed at the time of a progress payment while the subcontractor gets nothing from that payment for his laborers or for himself. The trial judge’s interpretation of the contract must therefore be rejected. See C.C.1945 (3 and 4), 1950, 1953 and 1956.
Similarly we reject the trial judge’s further reasoning that other payments to plaintiff and this subcontractor jointly by other general contractors, on other building contracts for other owners, obliged plaintiff to withhold 100% and (to the extent they exceeded amounts due for materials on those buildings?) to pay itself what it was owed on this building. Each of those other payments was also for its entire subcontract, including labor. In theory, the mate-rialman is not entitled to 100% of progress payments to a subcontractor because those payments include payment for labor. In practice, the materialman would cause havoc on the job the first time he appropriated the whole payment, leaving the laborers without pay, and he would destroy his own business because he would never again sell material to that subcontractor or (with those arrangements) to any other who learned of his behavior.
The building contract law is explicit in granting a privilege against the owner’s property and in requiring of the contractor a bond (with surety) conditioned on payment of all laborers, materialmen, etc. The contractor and the surety are therefore liable and the property is subject to the privilege.

Other Matters

Contractor and surety question proof of delivery of materials. The materi-alman introduced receipts for every delivery. All were signed by the subcontractor personally or by his employees (or, in one case, by an employee of the general contractor). The subcontractor’s testimony goes beyond the necessary proof of delivery to proof that the materials were incorporated in the building. The proof was adequate.
Contractor and surety argue that the bond recites they are bound to the mortgagee and the title insurer, rather than to building privilege claimants. But the bond is conditioned upon payment of claimants, was attached to and recorded with the contract in compliance with R.S. 9:4802, was expressly “given in accordance with” § 4802, and therefore obliges contractor and surety to pay protected claimants; R.S. 9:4803; Bickham v. Womack, 1935, 181 La. 837, 160 So. 431.
Plaintiff is not entitled to its attorney’s fee for preparing the privilege affidavit; George Kellett & Sons v. Schwartz Ind., La.App.Orl.1959, 107 So.2d 815.
Finally, plaintiff’s claim under R.S. 9:3902 for 10% attorney’s fees against the surety is denied for lack of “written amicable demand on the . . . surety”. A letter addressed to the corporate contractor, to the attention of the person who as an *953 individual and not as a corporate officer is surety, does not constitute a demand upon that individual surety.

Decree

The judgment is reversed insofar as appealed, and there is judgment for plaintiff for $21,434.84, with interest from judicial demand and all costs against Oxford Enterprises, Inc. and Lewis Clements (in solido with Walter Bourgeois); and plaintiff’s privilege in that amount is recognized and maintained against 13500 Chef Menteur Highway, Lots 1, 2 and 3 of Square F-3, New Orleans East Tract, Third District, City of New Orleans, owned by Ziegler Limited Partnership, Charles W. Ziegler, III, Partner.

REVERSED.

. Every . . furnisher of material . who . . . furnishes material for the . . improvement of immovable property . . . has a privilege for the payment in principal and interest of the materials upon the land and improvements on which . . . the materials . . . [have been] furnished.

. An amendment by Acts 1977 No. 65 allows “certified mail” but our facts pre-date that amendment.

. This amount includes $2,536.68 for materials bought between September 11 and 30, 1974, prior to the last payment, October 1, but presumably subsequent to the materialman’s statement to the subcontractor in September.