McCLENDON, J.
*1161 In this matter, a contractor and its surety appeal a trial court judgment in favor of a supplier of materials used on a construction project. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Bear Industries, Inc. (Bear) supplied limestone and sand materials to Amtek of Louisiana, Inc. (Amtek), a subcontractor on the New Roads Wal-Mart Supercenter project. The contractor was Hudson Construction Company of Tennessee (Hudson). Hanover Insurance Company (Hanover), as surety for Hudson, furnished the payment bond for the project. Bear, Hudson, and Amtek executed a Joint Check Agreement, and all payments to Bear on the project were by joint check from Hudson.
Bear sold the materials to Amtek from May 21, 2012, to July 12, 2013. It is undisputed that the materials were delivered. However, at some point, a dispute arose between Amtek and Hudson, and Hudson stopped making payments.[1] Bear filed a Statement of Claim and Privilege on September 16, 2013, alleging it was owed a total of $259,148.00 for the materials furnished and installed on the project. Payment was still not made, and on March 6, 2014, Bear filed suit against Amtek and Hanover under the Private Works Act. In response, Amtek filed a cross-claim against Hanover and Hudson, claiming an unpaid amount of $701,296.52. Hudson filed a peremptory exception raising the objection of prematurity, claiming that under its subcontract with Amtek all disputes had to be arbitrated. On July 9, 2014, the trial court granted the exception as to Hudson and ordered that Hudson and Amtek arbitrate their disputes.
The arbitration was conducted in April of 2016, and a Ruling was rendered on June 1, 2016.[2] Thereafter, Hudson and Hanover filed a Motion to Confirm the Arbitration Award, and Amtek filed a motion to confirm as well. Following a hearing on August 8, 2016, the trial court rendered judgment, and on August 24, 2016, the trial court signed its judgment, confirming the arbitration award.
Thereafter, on August 29, 2016, the trial court held a bench trial on Bear's claims. On October 20, 2016, the trial court read its reasons for judgment into the record, and on October 31, 2016, the trial court signed a judgment in favor of Bear and against Hanover and Amtek in the full sum of $259,914.80. The trial court also found Hanover obligated to Bear in the amount of $25,914.80 for attorney fees and found Amtek obligated to Bear in the amount of $40,000.00 for attorney fees. Lastly, the trial court found Amtek obligated to Hudson in the amount of *1162 $40,000.00 for attorney fees expended in defense of Bear's claim. Hudson and Hanover then filed a suspensive appeal, asserting several assignments of error, essentially arguing that Bear's lien did not comply with the Private Works Act and therefore was invalid. Hudson and Hanover additionally assert that the trial court erred in limiting Hudson's recovery for attorney fees from Amtek to $40,000.00.
DISCUSSION
The Louisiana Private Works Act, LSA-R.S. 9:4801, et seq. , was enacted to facilitate the construction of improvements on immovable property; it serves this purpose by granting certain rights to enumerated persons to facilitate recovery of the costs of their work from an owner with whom they lack privity of contract. Wholesale Electric Supply Company v. Honeywell International, Inc. , 16-1180 (La.App. 1 Cir. 5/11/17), 221 So.3d 98, 101. The Private Works Act is in derogation of general contract law; therefore, it must be strictly construed. In interpreting the Private Works Act, care must be taken not to overlook the legislative intent and fundamental aim of this act, which is to protect materialmen, laborers, and subcontractors who engage in construction and repair projects. Bernard Lumber Co., Inc. v. Lake Forest Const. Co., Inc. , 572 So.2d 178, 181 (La.App. 1 Cir. 1990).
Louisiana Revised Statutes 9:4802 clearly defines those persons granted a claim or privilege pursuant to the Act and provides, in pertinent part:
A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
* * *
(3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
* * *
B. The claims against the owner shall be secured by a privilege on the immovable on which the work is performed.
C. The owner is relieved of the claims against him and the privileges securing them when the claims arise from the performance of a contract by a general contractor for whom a bond is given and maintained as required by R.S. 9:4812 and when notice of the contract with the bond attached is properly and timely filed as required by R.S. 9:4811.
In their first assignment of error, Hudson and Hanover assert that the trial court erred in interpreting LSA-R.S. 9:4811. Specifically, they assert that the Notice of Commencement filed by Wal-Mart in the public records of Pointe Coupee Parish on May 31, 2012, did not contain the statutory requirements of a notice of contract under LSA-R.S. 9:4811. Therefore, according to Hudson and Hanover, the trial court erred in finding that the Notice of Commencement qualified as a notice of contract so that Bear's lien was untimely filed and Bear lost its privilege. To the contrary, Bear asserts that the trial court correctly interpreted LSA-R.S. 9:4811 and found that a timely notice of contract was properly filed.
Louisiana Revised Statutes 9:4811 provides, in relevant part:
A. Written notice of a contract between a general contractor and an owner shall be filed as provided in R.S. 9:4831 before the contractor begins work, as defined by R.S. 9:4820, on the immovable. The notice:
(1) Shall be signed by the owner and contractor.
*1163 (2) Shall contain the legal property description of the immovable upon which the work is to be performed and the name of the project.
(3) Shall identify the parties and give their mailing addresses.
(4) Shall state the price of the work or, if no price is fixed, describe the method by which the price is to be calculated and give an estimate of it.
(5) Shall state when payment of the price is to be made.
(6) Shall describe in general terms the work to be done.
B. A notice of contract is not improperly filed because of an error in or omission from the notice in the absence of a showing of actual prejudice by a claimant or other person acquiring rights in the immovable. An error or omission of the identity of the parties or their mailing addresses or the
improper identification of the immovable shall be prima facie proof of actual prejudice.
The Comments to LSA-R.S. 9:4811 provide that "[t]he owner is made personally liable, and the contractor may lose his privilege if the notice is not properly filed. A form of notice that substantially complies with the act will avoid imposition of these penalties unless actual prejudice to a claimant can be demonstrated." See LSA-R.S. 9:4811, Comment (c).
The trial court, in its reasons for judgment, discussed the requirements for the notice of contract. The court then stated, with regard to the notice of contract in this matter:
It does contain the signature of the owner, a legal description of the property, the names of the parties and their mailing address[es], and the general terms of the work to be done. It does not contain the signature of the contractor, the price, or when the payments were to be made, but it does have the bonds attached.
The trial court then noted that although the error or omission of certain items referred to in LSA-R.S. 9:4811B would make a prima facie case of actual prejudice, the trial court found that those items were not omitted here. Therefore, the court determined the issue to be whether the items that were omitted in the notice resulted in actual prejudice to a claimant or other person acquiring rights in the immovable. The trial court stated that Bear was the claimant and claimed no prejudice. Additionally, the court stated that Hudson was not a claimant or person acquiring rights in the immovable and, even if it was, there was no showing of actual prejudice to Hudson or Hanover. Accordingly, the trial court determined that the Notice of Commencement amounted to the notice of contract required under LSA-R.S. 9:4811 and LSA-R.S. 9:4802C.
The determination of whether a notice of contract was filed that met the requirements of LSA-R.S. 9:4811 is a question of fact, the resolution of which is subject to the manifest error standard of review. See Stobart v. State through Dept. of Transp. and Development , 617 So.2d 880, 882 (La. 1993) ; Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Pitre v. Buddy's Seafood , 11-0175 (La.App. 1 Cir. 8/16/12), 102 So.3d 815, 820, writ denied, 12-2058 (La. 11/16/12), 102 So.3d 41.
*1164 Upon our thorough and careful review of the record, we find no manifest error in the trial court's factual finding that a valid notice of contract was filed for the Wal-Mart project. As noted by the trial court, the Notice of Commencement set forth the parties and their addresses, the legal property description, and a general description of the improvements. Additionally, the performance and payment bonds attached to the Notice of Commencement stated the price of the project. Bear did not claim any prejudice, and there is no prima facie proof of actual prejudice. Therefore, finding substantial compliance with the form of the notice and no "actual prejudice by a claimant or other person acquiring rights in the immovable", we cannot say that the trial court lacked a reasonable basis for its decision that a notice of contract was properly and timely filed. Accordingly, Hudson and Hanover's first assignment of error is without merit.
In their second assignment of error, Hudson and Hanover assert that the trial court erred in determining the time frame for the filing of the Bear lien. The Private Works Act provides for the respective time periods for the filing of statements of claims and privileges. A 30-day time period after the filing of a notice of termination of the work is provided for in LSA-R.S. 9:4822A when a notice of contract has been filed, and, when no notice of a contract is filed, LSA-R.S. 9:4822C provides for a 60-day time period after the filing of a notice of termination of the work or the substantial completion of the work. Bernard Lumber Co. , 572 So.2d at 181. Hudson and Hanover maintain that because no notice of contract was filed, Bear's preservation of claims and privileges was regulated by LSA-R.S. 9:4822C, requiring that the claim be filed within sixty days of substantial completion, and Bear's lien was untimely filed.
We have already found no manifest error in the trial court's determination that the Notice of Commencement amounted to a notice of contract that was properly and timely filed. Therefore, LSA-R.S. 9:4822A is the applicable provision, which provides, in part:
If a notice of contract is properly and timely filed in the manner provided by R.S. 9:4811, the persons to whom a claim or privilege is granted by R.S. 9:4802 shall within thirty days after the filing of a notice of termination of the work:
(1) File a statement of their claims or privilege.
The Comments to LSA-R.S. 9:4822 provide: "[i]f a notice of contract is filed, a notice of termination is always required to commence the 30 day time for filing." See LSA-R.S. 9:4822, Comment (a).
It is undisputed that a notice of termination was not filed in this matter. Therefore, the 30-day tolling period for filing a statement of claim was never triggered. See Bernard Lumber Co. , 572 So.2d at 181-82. Accordingly, Bear's Statement of Claims and Privileges filed on September 16, 2013, was timely, and Hudson and Hanover's second assignment of error lacks merit.
Hudson and Hanover next assert that Bear's lien was also invalid because Bear failed to give the 10-day notice required under LSA-R.S. 9:4802G(2). In response, Bear asserts that the statute does not apply. Louisiana Revised Statutes 9:4802G(2) provides:
For the privilege under this Section or R.S. 9:4801(3) to arise, the seller of movables shall deliver a notice of nonpayment to the owner at least ten days before filing a statement of his claim and privilege. The notice shall be served by registered or certified mail, return receipt requested, and shall contain the name and address of the seller of movables, *1165 a general description of the materials provided, a description sufficient to identify the immovable property against which a lien may be claimed, and a written statement of the seller's lien rights for the total amount owed, plus interest and recordation fees. The requirements of this Paragraph (G)(2) shall apply to a seller of movables sold for use or consumption in work on an immovable for residential purposes.
Although the trial court determined that service upon Wal-Mart was not a prerequisite under LSA-R.S. 9:4802 to the preservation of Bear's privilege, see Lambert Bros., Inc. v. Ziegler , 361 So.2d 948, 950 (La.App. 4 Cir.), writ denied, 364 So.2d 121 (La. 1978), this court has previously decided that "the last sentence of paragraph G(2) is deemed to qualify the whole paragraph, including the first sentence, and notice is required only for properties used for residential purposes." Standard Materials L.L.C. v. C & C Builders, Inc. , 10-0250, p. 4 (La.App. 1 Cir. 12/22/10) (unpublished). Because the Wal-Mart Supercenter project was clearly a commercial project and not for residential purposes, we find this assignment of error to be without merit.
In their next assignment of error, Hudson and Hanover contend that Bear failed to comply with the 60-day notice requirement in the Joint Check Agreement, and, therefore, the trial court erred in failing to find that Bear forfeited its collection and lien rights to all but $30,545.07 of the $259,148.00 unpaid amount. In support of their argument, Hudson and Hanover rely on Section 1(e) of the Joint Check agreement, which provides:
Supplier will notify Hudson Construction Company if there is a failure of payment on the part of the subcontractor within sixty (60) days of the date of invoice. Failure of the supplier to so notify Hudson Construction Company shall constitute a waiver of any liens, rights or rights of collection against Hudson Construction.
Hudson argues that it had no knowledge of the outstanding sums due Bear until July 26, 2013, when it received an email from Bear with the Sworn Statement of Account, and, therefore, the notice was outside of the 60-day requirement for all but $30,545.07 of the invoices. On the other hand, Bear asserts it did not have to comply with the terms of the Joint Check Agreement because Hudson was consistently late in its payments and therefore had breached that agreement by failing to properly and timely pay Bear as evidenced in the Statement of Account. Bear also contends that it did not fail to comply with the terms of the Joint Check Agreement because the agreement did not specify that the notice be in writing, it put on evidence that there were emails and discussions throughout the project between Bear and Hudson regarding invoices and payments, and Hudson was aware of the balance owed to Bear.
The trial court initially determined that the general principles of suretyship law, as asserted by Hudson and Hanover, did not control the determination of the surety's liability on the bond and stated:
Hanover's liability under the Private Works Act differs from conventional surety principles. The Louisiana First Circuit in its 1975 decision of [ Bowles & Edens Co. v. H & H Sewer Systems, Inc. ], 324 So.2d 528, reviewed the legislative history of earlier and then current versions of the Private Works Act and concluded that the legislative intent was that the bond provided for in the Act was a statutory bond entitled to the same status as [the] bond furnished under the Public Works Act. As such, safeguards required for the bond by the Act *1166 would be read into the bond and provisions in the bond, not required by the Act, would be read out of the bond. The court noted that the main provision required of the bond by the statute was that it provided solvent security for the payment of workmen and furnishers of materials.
See Bowles & Edens Co. v. H & H Sewer Systems, Inc. , 324 So.2d 528, 532 (La.App. 1 Cir. 1975). The trial court then discussed the case of Glencoe Educ. Foundation, Inc. v. Clerk of Court and Recorder of Mortgages for Parish of St. Mary , 10-1872 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, writ denied, 11-1142 (La. 10/21/11), 73 So.3d 383, stating that, although dealing with the Public Works Act, the trial court held that allowing a surety to assert a "pay when paid" provision in its principal's contract as a defense to subcontractor claims for unpaid materials would render the protection afforded to such suppliers by the Public Works Act meaningless. The application of traditional suretyship articles in such a scenario would be contrary to the Public Works Act's avowed purpose of providing a sense of security to those performing work and furnishing materials. Glencoe , 65 So.3d at 233. Thus, the trial court, in Glencoe , held that because the contractual provision on which the surety relied was contrary to the purpose of the Public Works Act, the surety, which had issued a statutory bond, could not assert a "pay if paid" clause in a principal's subcontract as a defense to payment of sums owed to subcontractors who have performed work and supplied materials on a public construction project. Id.
For these same reasons, we agree with the trial court and find that the "pay if paid" defense is not available to Hanover under the Private Works Act. Allowing a surety to assert a "pay if paid" clause to defeat payment to a subcontractor on the basis that the contractor has not received full payment from the owner, where the owner has escaped liability to the subcontractors by relying on the payment bond, would render the protections afforded to laborers and suppliers on private works projects set forth in the Private Works Act meaningless.
The trial court also found that the defense based on the Joint Check Agreement was not available to Hanover. The agreement provided for payments from Hudson for Bear's materials to be paid by checks made payable to both Amtek and Bear. Further, according to the agreement, Bear was required to notify Hudson if Amtek did not pay an invoice within sixty days, and the failure of Bear to notify Hudson would constitute a waiver of any liens, rights, or rights of collection against Hudson. The trial court stated:
[T]he Private Works Act is sui generis and must be strictly construed and applied. This agreement cannot alter, add to, or detract from the strict statutory provisions. The statutes do not provide for a waiver of lien rights for failure to give the contractor advanced notice of an unpaid invoice.
Accordingly, Hanover cannot use this provision as a defense to Bear's claim. In addition, the agreement appears to be a unilateral obligation on the part of Bear with no reciprocal obligation or consideration from Hudson.
We agree with the trial court on both issues and find that Hanover is not entitled to read into its bond a safeguard that is not required by the Private Works Act and cannot read the terms of the Joint Check Agreement into its statutory bond. Accordingly, we find no error by the trial court. This assignment of error lacks merit.
In their fifth assignment of error, Hudson and Hanover complain that the trial court erred in finding Hudson liable to Bear for the amount of Bear's lien while alleviating Amtek of the responsibility to *1167 pay same, despite the express wording of the arbitration decision that Amtek shall indemnify, hold harmless, and defend Hudson for those claims. In its reasons, the trial court stated:
In making the awards, the arbitrator offset Amtek's claim against Hudson by the exact value of Bear's lien. Thus, the arbitrator clearly envisioned that Hudson would pay the lien. That decision has previously been made an enforceable judgment of this court. Therefore, as between Hanover and Amtek, Hudson, or more accurately, [its] surety, Hanover should pay Bear the $259,148 for the unpaid materials supplied to the job.
The record shows that in the arbitration award, Amtek was awarded $313,279.34 and Hudson was awarded $396,345.49, which included the $259,148.00 for Bear's lien. The awards resulted in Amtek owing $83,066.15 ($396,345.49-$313,279.24), which was the exact amount the arbitrator awarded Hudson in the arbitration decision. Hudson was given and credited the sums owed Bear from Amtek, constituting the indemnity required of Amtek. The trial court followed the arbitration ruling. Considering the foregoing, this assignment of error is without merit.
Lastly, Hudson and Hanover maintain that the trial court erred in limiting the award of attorney fees to Hudson from Amtek for the defense of Bear's claim to $40,000.00. They maintain that the uncontroverted testimony at trial established that it had incurred at least $75,000.00 in attorney fees. Amtek responded by arguing that no documentation was presented to support that amount.[3]
The trial court has much discretion in fixing an award of attorney's fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. Whitney Bank v. NOGG, L.L.C. , 15-1399 (La.App. 1 Cir. 6/3/16), 194 So.3d 819, 824 ; Regions Bank v. Automax USA, L.L.C. , 02-1755 (La.App. 1 Cir. 6/27/03), 858 So.2d 593, 595, writ denied, 03-2131 (La. 11/7/03), 857 So.2d 503. Based on our review, we find no abuse of the trial court's discretion and affirm the award of $40,000.00 to Hudson for reasonable attorney fees.
CONCLUSION
Based on the foregoing, we affirm the October 31, 2016 judgment of the trial court. All costs of this appeal are assessed to Hudson Construction Company of Tennessee and Hanover Insurance Company.
AFFIRMED.
WELCH, J., concurs in result only without reasons.

Amtek claimed that it was owed $701,296.52 from Hudson, an amount Hudson disputed. Hudson also sought recovery from Amtek for unsatisfactory work.

Hudson was awarded $83,066.15 in the arbitration.

We note that, in their appellee brief, Amtek asserted that the trial court erred in awarding any attorney fees to Hudson from Amtek for defending the Bear claim. However, Amtek has neither appealed nor filed an answer to Hudson and Hanover's appeal, and we are precluded from reviewing same. See LSA-C.C.P. arts. 2082 and 2133 ; Jackson Nat'l Life Ins. Co. v. Kennedy-Fagan , 03-0054 (La.App. 1 Cir. 2/6/04), 873 So.2d 44, 51, writ denied, 04-0600 (La. 4/23/04), 870 So.2d 307.