Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,461-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LARRY WAYNE SEAB, JR.,                          Plaintiffs-Appellees
AND DOROTHY ANN
TAUSCHER SEAB

versus

DONNY FURLOW                                    Defendant-Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-0213

Honorable Alvin Rue Sharp, Judge

* * * * *

WATSON, McMILLIN & STREET, LLP          Counsel for Appellant
By: W. Michael Street

BREITHAUPT, DUBOS & WOLLESON, LLC        Counsel for Appellees
By: R. Alan Breithaupt
    James R. Close

DANA S. BENSON                          In Proper Person,
                                        Defendant-Appellee

* * * * *

Before PITMAN, STONE, and COX, JJ.

**COX, J.**

This suit arises out of the Fourth Judicial District Court, Ouachita Parish, Louisiana. Donny Furlow filed a statement of claim against Larry Wayne Seab, Jr. and Dorothy Ann Tauscher Seab under the Louisiana Private Works Act, La. R.S. 9:4801, *et seq*. The Seabs then filed a petition for writ of mandamus against Mr. Furlow and the Ouachita Parish Clerk of Court, requesting that the Clerk of Court be ordered to cancel Mr. Furlow's statement of claim. The trial court granted the writ of mandamus in favor of the Seabs and granted their damages request. Mr. Furlow now appeals. For the following reasons, we reverse the granting of the writ and the award of damages and attorney fees and remand for further proceedings.

## FACTS

The Seabs own Lots 32 and 33 in Eagle Ridge Subdivision. They hired Dennie Huddleston, a general contractor, to build their house. Mr. Huddleston subcontracted with Mr. Furlow to perform floor and tile work.

Mr. Furlow filed a statement of claim (hereafter referred to as a "lien") on February 28, 2019, in the Ouachita Parish public records. He stated he was a subcontractor for Mr. Huddleston and was owed $14,100 for labor and materials in floor and tile work on the following property:

> LOT 33, EAGLE RIDGE SUBDIVISION, SEC. 16,
> TOWNSHIP 18, RANGE 3, having a Municipal Address of
> 100 Vayda Mae Lane, West Monroe, LA 71291.

On January 31, 2020, when the lien was not paid, Mr. Furlow filed a separate suit against the Seabs and Mr. Huddleston. At this point, Mr. Furlow hired an attorney to assist him; he did not have an attorney assist him

in filing the statement of claim. In the suit, Mr. Furlow described the property as:

> Lots 32 & 33 Eagle Ridge Subdivision, A Planned Residential Development situated in Sections 16 & 25, Township 18 North, Range 3 East, Ouachita Parish, Louisiana as per plat filed in Plat Book 27, page 57 (DR# 1743930) of the records of the Ouachita Parish Clerk of Court.

On October 16, 2020, the Seabs sent a letter to Mr. Furlow demanding the lien be cancelled pursuant to La. R.S. 9:4833. The Seabs claimed Mr. Furlow was paid $11,500 by Mr. Huddleston in connection with the work performed. Mr. Furlow did not voluntarily cancel the lien.

On January 21, 2021, the Seabs filed a petition for writ of mandamus against Mr. Furlow and the Ouachita Parish Clerk of Court. They asserted that Mr. Furlow's lien should be cancelled because it described only Lot 33 of Eagle Ridge Subdivision and although he included an invoice, it did not specify the amount owed for each item. They claimed their general contractor, Mr. Huddleston, transferred funds to Mr. Furlow and any additional claims by Mr. Furlow are either inaccurate or unsubstantiated.

The Clerk of Court answered the petition and stated she is without knowledge of the facts contained in the petition, except that she is the Clerk of Court and Mr. Furlow did file a statement of claim. Mr. Furlow answered the petition and denied that his charges were inaccurate or unsubstantiated. He stated Lots 32 and 33 are adjoining lots with the same municipal address.

Trial was held on April 8 and 9, 2021. Mr. Seab testified that he hired Mr. Huddleston to build his house on Lots 32 and 33 of Eagle Ridge Subdivision. He stated that Mr. Furlow installed flooring and tile throughout the home. He testified to the following regarding his building

loans: the original construction loan was $440,000 at 4.95 percent; as of September 2019, he had a $100,000 loan from Progressive Bank at 4.68 percent; he had two $50,000 loans at 5 percent each from family members for 15-year terms; in October 2020, he qualified for a 3.6 percent mortgage to replace the Progressive Bank and family loans, but was unable to get it because of the lien; and in April 2021, he qualified for a loan with 2.35 percent interest. Mr. Seab introduced an amortization schedule of the current loans and hypothetical loans, which included only the interest paid as of April 2021.

Mr. Huddleston testified that he was the general contractor on the Seabs' house. He stated that he subcontracted with Mr. Furlow for labor only and he provided the materials to Mr. Furlow. Mr. Huddleston identified a payment schedule and cancelled checks written to Mr. Furlow. He stated that he and Mr. Furlow had an agreement for the cost of the labor prior to the work being performed. He testified that Mr. Furlow has worked for him on four projects and Mr. Furlow has never invoiced him for work. He stated that he paid Mr. Furlow for work performed when he made a verbal draw request.

Mr. Huddleston stated that Mr. Furlow's work ended when he laid some tile on the back porch, with which they were unsatisfied. They hired someone else to grout and finish the back porch. He stated that the tiles Mr. Furlow laid on the back porch were tiles that were not in the original contract, but tiles Mr. Furlow bought for a quoted price of $5.50 per foot. Mr. Huddleston stated that he agreed to Mr. Furlow's price on the tile. He testified that he did not believe that the purchase of the tiles was the reason

Mr. Furlow was asking for more money because $5.50 times 200 square feet is about $1,000. He stated that Mr. Furlow quit coming to the jobsite. Mr. Huddleston stated, "He wanted to get more money on the back patio from Mr. Seab and I wouldn't allow it. He wasn't going to pay for it; it wasn't worth it. And then he was unhappy with the finished product so, you know, I've got to take care of the customer[.]"

Mr. Huddleston was asked about any arrests or criminal convictions. He stated, "Buddy, there's probably four things I've been arrested for in the last year and a half, and we'll see how they turn out. It's going pretty good." He testified that one of the charges is in connection to the misappropriation of construction funds.

Mr. Furlow testified that the quoted price for the Seab house was "nowhere even close" to what he and Mr. Huddleston had agreed. He stated that he did not have a written contract with Mr. Huddleston on any of the projects; he just filled out an invoice and submitted it to Mr. Huddleston. He testified that he was paid $4,000 on the Seab project and is owed $14,100. Mr. Furlow stated that he was paid in one $2,000 check and $2,000 in cash.

Mr. Furlow testified that the disagreement regarding the blue tile on the back porch was not the amount per foot, but the actual square footage. He stated that Mr. Huddleston told him the back porch was 200 square feet, but it was actually 600 square feet. This discrepancy meant they did not have enough tile. He stated that he only billed for what he stuck down, but did not grout because there was no stone left. Mr. Furlow stated that Mr. Huddleston should have informed the Seabs that he incorrectly measured the

4

porch. He testified that he filed a separate lawsuit against the Seabs and Mr. Huddleston a year after the lien was filed, when the lien was not paid.

The Seabs filed an offering as to quantum on May 7, 2021. They argued they were entitled to attorney fees because Mr. Furlow refused to cancel the lien. They claimed damages for past and future excess interest payments of $6,879.82 and attorney fees of $9,304.50. The Seabs asserted that because of the statement of claim, they were unable to obtain a 15-year, $215,000 mortgage for their home in September 2019 with an interest rate of 3.63 percent. They stated that they were left with the following three loans in September 2019: 15-year, $100,000 loan at 4.38 percent; 15-year, $50,000 private loan at 5 percent; and 15-year, $65,000 private loan at 5 percent. The Seabs presented amortization schedules for these three loans as well as two possible mortgages that they could have obtained if the lien had been cancelled (a 15-year, $200,000 mortgage at 2.5 percent and a 15-year, $200,000 mortgage at 2.3 percent). The Seabs asserted that the difference between the interest they actually paid and could have paid, plus the excess interest they will be required to pay when they refinance after the lien is cancelled, totaled $6,879.82. The Seabs also submitted a billing statement for attorney fees totaling $9,304.50.

The trial court issued its judgment on May 7, 2021, and ordered the January 22, 2021, writ of mandamus be made peremptory at the cost of Mr. Furlow; the Clerk of Court to cancel the lien; and Mr. Furlow cast with all costs, including $6,879.82 in damages and $9,304.50 in attorney fees. In finding in favor of the Seabs, the trial court highlighted the following reasons for his finding, which were outlined by the Seabs: the exclusion of

5

Lot 32; the omission of Ouachita Parish; Eagle Ridge Subdivision is located in Sections 16 and 25; the attached invoice failed to specifically itemize the prices of each component; the lien stated "labor and materials" but did not specify which materials were used; and the amount of the obligation is not accurately set forth in the lien. Mr. Furlow now appeals.

## DISCUSSION

*Cancellation of Lien*

Mr. Furlow argues the trial court erred in making the Plaintiffs' writ of mandamus peremptory and directing the Clerk of Court to cancel his lien. He asserts that his lien satisfies the requirements of La R.S. 9:4822. He argues technical defects in the notice should not defeat the claim as long as the notice is adequate to serve the purposes intended.

The Seabs contend that Mr. Furlow's lien fails to satisfy the requirements of La. R.S. 9:4822 and the trial court did not err. They assert that statutes creating liens and privileges are *strici juris* and their provisions are to be strictly construed against the parties in whose favor the liens are created.

The Louisiana Private Works Act, La. R.S. 9:4801, *et seq*., was enacted to facilitate the construction of improvements on immovable property; it serves this purpose by granting certain rights to enumerated persons to facilitate recovery of the costs of their work from an owner with whom they lack privity of contract. *Wholesale Electric Supp. Co. v. Honeywell Int'l, Inc*., 2016-1180 (La. App. 1 Cir. 5/11/17), 221 So. 3d 98, *writ denied*, 2017-0986 (La. 10/9/17), 227 So. 3d 834. The Private Works Act is in derogation of general contract law; therefore, it must be strictly

6

construed. In interpreting the Private Works Act, care must be taken not to overlook the legislative intent and fundamental aim of this act, which is to protect materialmen, laborers, and subcontractors who engage in construction and repair projects. *Bear Indus., Inc. v. Hanover Ins. Co.*, 2017-0301 (La. App. 1 Cir. 1/4/18), 241 So. 3d 1159, *writ denied*, 2018-0224 (La. 3/23/18), 238 So. 3d 458. The Private Works Act was amended in 2019 by Act 325, effective January 2020, but the purpose of the Private Works Act remains unchanged.

When the statement of claim was filed on February 28, 2019, La. R.S. 9:4822(G) provided:

> G. A statement of a claim or privilege:
>
> (1) Shall be in writing.
>
> (2) Shall be signed by the person asserting the same or his representative.
>
> (3) Shall **reasonably identify the immovable** with respect to which the work was performed or movables or services were supplied or rendered and the owner thereof.
>
> (4) Shall set forth the amount and nature of the obligation giving rise to the claim or privilege and **reasonably itemize the elements** comprising it including the person for whom or to whom the contract was performed, material supplied, or services rendered. The provisions of this Paragraph shall not require a claimant to attach copies of unpaid invoices unless the statement of claim or privilege specifically states that the invoices are attached.
>
> (Emphasis added.)

As noted in the comments following La. R.S. 9:4822, the purpose of the lien is to give notice to the owner and contractor of the existence of the claim and to give notice to persons who may deal with the owner that a privilege is claimed on the immovable. *Simms Hardin Co., LLC v. 3901*

7

*Ridgelake Drive, L.L.C.*, 12-469 (La. App. 5 Cir. 5/16/13), 119 So. 3d 58, *writ denied*, 2013-1423 (La. 9/27/13), 123 So. 3d 726.  The comments also note that technical defects in the notice should not defeat the claim or privilege as long as the notice is adequate to serve the purposes intended. *Buck Town Contractors & Co. v. K-Belle Consultants, LLC*, 2015-1124 (La. App. 4 Cir. 4/6/16), 216 So. 3d 981, *writ denied*, 2016-0831 (La. 9/6/16), 205 So. 3d 915.

The determination of whether a statement of claim meets the requirements of La. R.S. 9:4822 is a question of fact, the resolution of which is subject to the manifest error standard of review.  *See Stobart v. State through Dept. of Transp. and Dev.*, 617 So. 2d 880 (La. 1993); *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).  In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.  However, questions of law, such as the proper interpretation of a statute, are reviewed by this Court under the *de novo* standard of review. *Louisiana Municipal Ass'n v. State*, 2004-0227 (La. 1/19/05), 893 So. 2d 809; *Clinton v. Jones*, 53,747 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1119, *writ denied*, 2021-00449 (La. 6/8/21), 317 So. 3d 323.

The first two requirements of La. R.S. 9:4822(G) were unquestionably met by Mr. Furlow.  The third requirement is that the statement of claim *reasonably* identify the immovable.  Because we are reviewing the trial court's interpretation and application of the requirements of a statement of claim, we conduct a *de novo* review.

8

As stated previously, the Private Works Act was amended in 2019 by Act 325, effective January 2020. There were multiple amendments to the property description requirements within the Private Works Act. The requirements for a statement of claim were reworded but did not substantively change. The statement of claim requires a reasonable identification of the property, while various other statutes within the Private Works Act required a legal property description or now require a complete property description.

The following statutes from the Private Works Act are examples of amendments made in Act 325. La. R.S. 9:4810, as currently written, defines a complete property description as "any description that, if contained in a mortgage of the immovable properly filed for registry, would be sufficient for the mortgage to be effective as to third persons." La. R.S. 9:4811(A)(2) was amended from requiring a legal property description to now requiring a complete property description. La. R.S. 9:4822(E)(1) was amended from reasonably identifying the immovable to requiring a complete property description. La. R.S. 9:4831 added the requirement of a complete property description or another reasonable identification of the immovable. The revision comments from La. R.S. 9:4831 provide:

> Subsection B clarifies the degree of specificity of property descriptions required in filings made under the Private Works Act. All filings made by the owner, including notices of contract and notices of termination, must contain a complete property description, a term defined in R.S. 9:4810. Filings made by other persons, such as statements of claim or privilege filed by claimants, may contain a complete property description but are required to contain only a reasonable identification of the immovable. In neither case, however, is a mere street address sufficient.

Based on these revisions and comments, it is clear that a reasonable identification of the property is not equivalent to a complete or legal property description.

Mr. Furlow provided more than a "mere street address." Along with the municipal address, he also included one of two adjacent lots, the subdivision, section, township, and range. Although he did not include the parish, he stated it was in West Monroe and filed the lien in Ouachita Parish, which is the proper parish.

The purpose of filing the statement of claim is to put owners and third parties on notice of the lien or privilege. Here, Mr. Seab testified that he could not obtain a new loan on the property because of the lien. For this reason, third parties were clearly on notice of the lien, despite the alleged defects in the property description.

In this case, the omission of Lot 32, when the house is located on both Lots 32 and 33 and they share a municipal address, does not defeat the requirement of a *reasonable* identification of the property. We find that the trial court erred in requiring more than a reasonable identification of the property. For this reason, we reverse the trial court's judgment regarding the property description and find that it is adequate under La. R.S. 9:4822(G).

The fourth and final requirement for a statement of claim is that it set forth the amount and nature of the obligation and reasonably itemize the elements comprising it, including materials supplied or services rendered. In *Jefferson Door Co., Inc. v. Cragmar Const. L.L.C*, 2011-1122 (La. App. 4 Cir. 1/25/12), 81 So. 3d 1001, *writ denied*, 2012-0454 (La. 4/13/12), 85 So. 3d 1250, the court found that the contractor had not reasonably itemized the

elements that comprised the lien where the lien stated that "various materials" would be "more particularly itemized on the attached invoices"; however, the referenced invoices were not attached. The *Jefferson Door* lien stated it was for "certain materials consisting of but not limited to trim, millwork, etc." The court held this was not a reasonable itemization of materials. The *Jefferson Door* case is distinguishable from the case before us because Mr. Furlow did attach an invoice to his lien and included a list of services.

In *Bradley Elec. Services, Inc. v. 2601, L.L.C.*, 2011-0627 (La. App. 4 Cir. 12/14/11), 82 So. 3d 1242, the court found that the contractor's lien was invalid because the lien included only a lump sum statement of the amount owed and did not itemize the elements comprising the lien. In *Tee It Up Golf, Inc. v. Bayou State Const., L.L.C.*, 2009-855 (La. App. 3 Cir. 2/10/10), 30 So. 3d 1159, the court found that the lien included only a lump sum under the category "Materials Supplied" and made no attempt to itemize the elements comprising the amount, as required by the statute. The *Bradley Elec. Services* lien and *Tee it Up Golf* lien are distinguishable because Mr. Furlow provided a list of his services in his attached invoice.

In *Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C.*, 2001-0657 (La. App. 4 Cir. 3/27/02), 815 So. 2d 301, *writ denied*, 2002-1177 (La. 6/14/02), 818 So. 2d 785, the court found that the nature of the obligation giving rise to the claim was set forth in the lien as well as a reasonable itemization of the elements comprising it with the following language:

> [T]o furnish labor material to construct twenty-one (21) condominium units at Belleville Condominiums, a project of Belleville Historic Development, L.L.C. Said work was performed as per the aforementioned contract.

11

In *Simms Hardin Co., L.L.C. v. 3901 Ridgelake Drive, L.L.C., supra*, the court held that the following lien affidavits contained sufficient descriptions of the work performed that gave rise to the claim:

> • Sharp Electric's lien affidavit claims the amount of $91,492.60 for "electrical and lighting work."
>
> • Commercial Paint's lien affidavit asserts a claim for the amount of $58,563.10 for "wall preparation and general painting work."
>
> • Simms Hardin's lien affidavit claims the amount of $106,248.00 for "framing, insulation, and drywall installation."
>
> • Gallo's lien affidavit claims the amount of $78,382.20 for "plumbing installation work."
>
> • Crasto Glass's lien affidavit claims the amount of $45,346.80 for "aluminum framing and glass and glazing installation work."
>
> • Year Round's Statement of Lien claim claims the amount of $119,028.70 for "air conditioning and ventilation work."

We likewise find that the invoice attached to the lien adequately meets the statute's requirement of setting forth the amount and nature of the obligation and reasonably itemizing the elements. Mr. Furlow listed the following on his invoice:

> Custom shower master bathroom
> Herringbone tile floors master & children's bathroom
> Basket weave pavers tile floors half bath, laundry room, workout room
> Herringbone & brick joint tile tub-hop
> Wood floors den, kitchen, bedrooms, hallways, dining room
> Stone back patio
> Jack hammer out concrete & repour around shower drain
> $14,100

Mr. Huddleston testified at trial that Mr. Furlow was hired for floor and tile labor. The trial court highlighted and agreed with Mr. Seab's contention that the invoice did not specifically itemize the prices of each

12

component and the lump sum was not sufficient to meet the statutory requirements.

The statute requires a *reasonably* itemized list of elements comprising the obligation. In reviewing the previously cited cases, we do not find that the statute, as written, requires that the itemized list specifically price each component of work. Mr. Furlow's invoice is more than a lump sum. His invoice breaks down the services performed in each room and the total cost of his services, based on this list of work performed. We find that the trial court erred in requiring more than a reasonably itemized list.

We reverse the trial court's judgment regarding the itemized list, and we find the statement of claim to be valid.

*Damages*

Mr. Furlow argues that the trial court erred in awarding damages and attorney fees to the Seabs. He asserts La. R.S. 9:4833 allows recovery of damages and attorney fees resulting from the failure to cancel an improperly recorded lien, but only when the lienholder fails to cancel without reasonable cause.

Because we find the statement of claim to be valid, Mr. Furlow was not unreasonable in refusing to voluntarily cancel his lien. We reverse the award of damages and attorney fees.

### CONCLUSION

For the reasons expressed above, we reverse the trial court's judgment granting the writ of mandamus cancelling Mr. Furlow's statement of claim and awarding damages and attorney fees. We remand for further

13

proceedings of what money, if any, is owed to Mr. Furlow. Costs associated with this appeal are cast on the Seabs.

**REVERSED AND REMANDED.**